UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RSM McGladrey, Inc.,

                    Plaintiff,

v.

Peter Epp, Gil Bernhard and
Steven Schwartz,

                    Defendants.

Civil No. 11-cv-00612 (ADM/SER)

**PLAINTIFF'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION
FOR PRELIMINARY INJUNCTION**

Plaintiff RSM McGladrey, Inc. ("RSM") respectfully submits this Memorandum of Law in Support of its Motions for a Preliminary Injunction to enjoin Defendants Peter Epp ("Epp"), Gil Bernhard ("Bernhard") and Steven Schwartz ("Schwartz") from further violating restrictive covenants in their employment agreements with RSM.

## <u>INTRODUCTION</u>

RSM seeks a preliminary injunction against the Defendants, three former long-time employees, enjoining them from further violating restrictive covenants in their employment agreements that prohibit them from soliciting RSM's clients and employees for a period of two years after the termination of their employment and requiring them to otherwise abide by the contractual terms they agreed to during their employment with RSM.  In breach of the non-solicitation covenants, Defendants, who left RSM in January 2011 and joined one of RSM's key competitors in New York in February 2011, have been engaged in an effort to divert to their new employer RSM's health care practice, one of its important practice areas, along with the people at RSM who service that business.

1

They have solicited RSM's health care clients to terminate their relationships with RSM and retain Defendants' new employer.  To date, at least seven RSM health care clients have left RSM and retained Defendants' new employer, and Defendants admit to servicing them there.  Further, Defendants have also been soliciting RSM's employees, and at least ten RSM employees have left or given notice of their departures to join Defendants' new employer.  If Defendants are not promptly enjoined from further wrongful activity in breach of their covenants, RSM will suffer immediate and substantial harm to its operations and reputation.

## STATEMENT OF FACTS

### I.     The Parties

RSM is a corporation organized under the laws of the State of Delaware with offices at various locations around the country.  RSM provides tax services.  (Doc. No. 1-11, Affidavit of Donald A. Lipari (the "Lipari Aff."), ¶ 3.)  Epp, Bernhard and Schwartz are New York residents who have consented to personal jurisdiction and an exclusive judicial forum in Minnesota.   (Doc. Nos. 1-6; 1-7; and 1-8, Managing Director Employment Agreements, Exhibits A, B and C to the Complaint, hereinafter, "Agreements".)

Epp and Bernhard were employed by American Express Tax and Business Services Inc. ("TBS") at its office in New York City commencing in 1998.  Effective October 1, 2005, RSM McGladrey Business Services, Inc. and its parent H & R Block purchased all of TBS's stock, merged TBS into RSM, a subsidiary, and dissolved TBS.  As of that date, Epp and Bernhard became managing directors of RSM.  Schwartz, who

2

became employed at TBS in 1998, and then at RSM, became a managing director of RSM as of October 1, 2008. (Lipari Aff., ¶ 2.)

The Defendants were instrumental in RSM's health care practice. That practice, which covers a broad range of services, such as assurance, tax and regulatory and operations consulting, for clients in the health care industry, including Federally-Qualified Health Centers, is a highly specialized one. RSM and TBS spent years developing that practice which, as a whole, generated approximately $11 million in the fiscal year ended April 30, 2010. The Defendants were responsible for a significant portion of the business of that practice and were involved in work from all areas of the practice representing more than $7 million in annual fees. In addition, Epp, as leader of the New York health care practice, and Bernhard, as leader of health care assurance services, were involved in supervising all services to clients served by the health care practice. Over the years, TBS and RSM dedicated substantial time and resources to developing and nurturing the clients the Defendants serviced. (Lipari Aff., ¶ 4.)

## II.   The Agreements

On October 1, 2007, Epp and Bernhard entered into new Managing Director Employment Agreements with RSM (the "Agreements"), which set forth the terms of their employment. On October 1, 2008, Schwartz entered into his RSM Agreement. (Lipari Aff., ¶ 5.)

In the Agreements, the Defendants agreed, among other things, that, following the termination of their employment at RSM, they would not, for a period of two years after leaving RSM, solicit or attempt to solicit, or render services to, any "Protected Client,"

defined to include, *inter alia*, any client serviced by the RSM offices to which the Defendants, within the two-year period prior to their leaving RSM, were assigned or any client they themselves had serviced or to whom they had been introduced. (Agreement, Section 5.2(a).) Defendants further agreed that, for a period of two years after they leave RSM, they would not solicit or induce any partner or employee of RSM to leave their employment, or offer or cause to be offered, to any such person, any position of employment or other professional affiliation. (Agreement, Section 5.2(c).) (These covenants are referenced together herein as the "Non-Solicitation Covenants".) (Lipari Aff., ¶ 6.)

The Agreements contained a key change from Epp's and Bernhard's previous employment agreements in that they narrowed the scope of clients that could not be solicited. "Protected Client," in the Agreement is defined to cover any client serviced by the RSM offices to which the Defendants, within the two-year period prior to their leaving RSM, were assigned or any client they themselves had serviced or to whom they had been introduced or obtained confidential information concerning. By contrast, in Epp's previous agreement, the term "Nonsolicitation Clients" covered all clients of the employer at any time during the term of Epp's employment, and, in Bernhard's previous agreement, the non-solicitation provision covered "any of the clients of [the employer] or its affiliates." (Doc. No. 1-12, Affidavit of Michelle McKenzie (the "McKenzie Aff."), ¶ 3.)

The Defendants acknowledged, *inter alia*, that (i) they had access to trade secrets and confidential information of RSM; (ii) all clients of RSM are assets of RSM and not

those of an individual managing director; (iii) they had carefully considered the restrictive covenants in the Agreements and agreed that they were "reasonable, necessary and essential to the preservation of the business of [RSM] [and] that such restrictions will not unduly restrict Managing Director in earning a livelihood in the event of Managing Director's termination from [RSM]"; and that (iv) their agreements and covenants in Article 5 of the Agreement were "an essential part of the inducement to [RSM] to enter into this Agreement."  (Agreement, Section 5.1.)

In the Agreements, the Defendants agreed not to disclose to any party other than RSM, during or after their employment or partnership, any trade secrets or other "Confidential Information" they learned or obtained while managing directors at RSM. "Confidential Information" is defined to include "information disclosed to or known or created by Managing Director…as a consequence of Managing Director's position with [RSM]" and "information regarding the clients of any person or entity for which [RSM] provides services."  (Agreement, Section 5.5.)

The Defendants further agreed that, if they breached, or threatened to breach, any of the provisions or terms of the Agreements, RSM would be entitled to seek injunctive relief against them.  In addition, they agreed to "waive[] any requirement that [RSM] prove that any threatened or actual breach, violation or failure to comply fully with the terms, provisions or conditions of this Agreement will cause irreparable injury or that there is no adequate remedy at law."  They agreed, moreover, that, if they became employed at any other firm during the two-year period after the termination of their employment, "there shall be a presumption that Managing Director is responsible for

such firm's activities in violation of this Agreement" and that, in any proceeding for injunctive or other equitable relief, they would not assert that their Non-Solicitation Covenants were "either unnecessary, unreasonable or unenforceable, [or] that any of them illegally restrain trade, competition or any personal rights of Managing Director." (Agreement, Sections 6.1 and 6.2.)

The parties to the Agreements agreed to arbitrate "[a]ny controversy, claim, or dispute arising out of or relating to this Agreement or any breach thereof, including without limitation any dispute concerning the scope of the arbitration clause." They further agreed that, notwithstanding the arbitration clause, claims for violation of the Non-Solicitation Covenant, among others, "may be brought immediately in court…for the purpose of obtaining preliminary injunctive relief (e.g. temporary restraining orders and/or preliminary injunctions) pending the outcome of [arbitration] and any permanent equitable relief awarded in conjunction therewith." (Agreement, Section 8.5(a).) The parties further agreed that the Agreements would be governed by the laws of the State of Minnesota "without giving effect to its, or any other state's choice of law provisions." (Agreement, Section 8.8.)

## III.   The Breaches By Respondents of Their Non-Solicitation Covenants

In January 2011, Epp and Bernhard requested that RSM terminate their employments. In accordance with that request, Epp and Bernhard were terminated on January 17, 2011. RSM terminated Schwartz for cause on January 5, 2011. Prior to their terminations, RSM offered to meet with Epp and Bernhard to discuss servicing clients, but rather than act in an orderly fashion as required by the Agreements, these

6

Defendants decided to thumb their noses at their contractual obligations and instead loot RSM of its clients and employees. Epp, Bernhard and Schwartz have moved to J.H. Cohn LLP ("Cohn"), a New York-based firm that offers the same services as RSM and is one of RSM's chief competitors in the New York area.  Defendants are, in contravention of their agreements, trying to take RSM's health care practice with them to their new employer.  (Lipari Aff., ¶ 7.)

The Defendants have admitted that, over the past several weeks, they have been soliciting RSM clients they had previously serviced and are inducing and/or attempting to induce such clients to terminate their relationship with RSM and to engage their new employer.  At least seven RSM health care clients that had been serviced by the Defendants have terminated their engagement of RSM and retained Cohn.  Other RSM health care clients have recently terminated their engagements of RSM for other providers not known at this time to RSM.  (Lipari Aff., ¶ 8.)

In soliciting and servicing RSM clients, the Defendants are in violation of their Non-Solicitation Covenants, in which they agreed, *inter alia*, that, for a period of two years after leaving RSM, they would not solicit or attempt to solicit, or render services to, any "Protected Client," defined to include, *inter alia*, any client serviced by the RSM offices to which they were assigned or any client they themselves had serviced or to whom they had been introduced.  (Agreement, Section 5.2(a).)  Further, the Defendants have also been contacting RSM employees about leaving their employment with RSM and joining them at their new employer.  At least ten RSM employees from the health care practice have, over the past two weeks, resigned from RSM or given notice of their

departure1 to go to Cohn.  These departures are a result of the efforts of the Defendants to divert from RSM the personnel needed to service the clients appropriated from RSM. (Lipari Aff., ¶ 9.)   Such acts violate the Non-Solicitation Covenants in which the Defendants agreed that, for a period of two years after they leave RSM, they would not solicit or induce any employees of RSM to leave their employment, or offer or cause to be offered, to any such persons, any position of employment or other professional affiliation.  (Agreement, Section 5.2(c).)

## IV.   The Removal of This Action

RSM commenced this action on March 7, 2011, in the Minnesota Hennepin County District Court.  That day, RSM obtained a temporary restraining order enjoining Defendants from, *inter alia*, soliciting from any Protected Clients services of the type provided by RSM, servicing such clients and soliciting or inducing any employee of RSM to terminate his or her employment with RSM.  On March 9, 2011, Defendants removed the action to this Court.  On March 11, 2011, RSM filed a motion to remand the action to state court.  That motion is scheduled to be heard on March 21, 2011, with the present motion.

## V.   The Preliminary Injunction Order Entered by the Missouri Circuit Court

Defendants were each, in addition to Managing Directors at RSM, partners at McGladrey & Pullen LLP ("M&P"), an accounting firm that provides accounting, audit and attest services.  RSM and M&P operate in an alternative practice structure, and perform services for a number of shared clients.  RSM and M&P share many clients in the health care practice.  As partners at M&P, each of the Defendants entered into

8

partnership agreements with M&P (the "M&P Agreements") which, among other things, contain non-solicitation provisions identical to the Non-Solicitation Covenants at issue in the present action.  The Defendants each left M&P on the same day they left RSM, and the RSM clients now being serviced by Cohn were also M&P clients.  (*See generally* Lipari Aff.)

On March 4, 2011, M&P commenced an action entitled *McGladrey & Pullen, LLP v. Epp, et al.*, Case No. 1116-CV-04885 (Mo. Circuit Ct. Jackson Co.) in the Missouri Jackson County Circuit Court to enforce the Non-Solicitation Covenants in the M&P Agreements through a preliminary injunction pending arbitration proceedings in Kansas City Missouri.[1]  On March 11, 2011, the Court heard oral argument on M&P's motion for a preliminary injunction.  Later that day, the court issued an Order granting M&P's motion, preliminarily enjoining Epp, Bernhard and Schwartz from, *inter alia*, soliciting or accepting from any Protected Client any business of a type similar to that provided by M&P; servicing such Protected Clients; and soliciting or inducing any personnel of M&P to leave their employment with M&P.  A copy of the Order is attached to the Declaration of Arthur G. Boylan (the "Boylan Decl.") as Exhibit B.

---

[1]  The M&P Agreement provides for an exclusive forum in Missouri for disputes relating to the M&P Agreement and for Iowa law to govern the adjudication of such disputes.

## **LEGAL ANALYSIS**

**I.      RSM IS ENTITLED TO A PRELIMINARY INJUNCTION ENJOINING DEFENDANTS FROM VIOLATING THEIR LEGAL AND CONTRACTUAL OBLIGATIONS.**

Pursuant to Sections 6.1 and 8.5 of the Agreement, RSM is entitled to enforce Defendants' Non-Solicitation Covenants in court through preliminary injunctive relief.

The Court, in determining whether to grant a preliminary injunction, weighs the equities pursuant to the following four factors:

(1)      the movant's likelihood of success on the merits;

(2)      threat of irreparable harm to the movant in the absence of relief;

(3)      the state of the balance of between this harm and the injury that granting the injunction will inflict on other parties litigant; and

(4)      the public interest.

*See Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).  *See also Coca-Cola Co. v. Purdy*, 382 F.3d 774, 782 (8th Cir. 2004); *Boston Scientific Corp. v. Duberg*, 2010 U.S. Dist. LEXIS 130843, *12-13 (D. Minn. Nov. 24, 2010).

Under this analysis, a preliminary injunction, pending arbitration of this dispute,[2] enjoining Defendants from further soliciting RSM clients and employees in violation of their Non-Solicitation Covenants, is necessary to prevent immediate and irreparable harm to RSM.

---

[2]  Under Section 8.5 of the Agreements, the parties agreed to arbitrate any dispute arising out of the Agreement other than the claims asserted herein and for which the parties expressly agreed may be brought immediately in court without having to first commence an arbitration for the purpose of obtaining preliminary injunctive relief, including a temporary restraining order.

7508408v1

On March 11, 2011, the Missouri Jackson County Circuit Court, upholding the very same Non-Solicitation Covenants at issue in the present case against Epp, Bernhard and Schwartz, granted M&P's preliminary injunction motion. *See McGladrey & Pullen, LLP v. Epp, et al.*, Case No. 1116-CV-04885 (Mo. Circuit Ct. Jackson Co. March 11, 2011)  Boylan Decl., Ex. B.

Similarly, in November 2009, the Hennepin County District Court, upholding the identical Non-Solicitation Covenants in an action brought by RSM against former managing directors who, like the Defendants herein, had joined a competitor and violated the Non-Solicitation Covenants, granted a preliminary injunction and temporary restraining order. *See RSM McGladrey, Inc. v. Regan*, Court File No. 27-CV-09-26446 (Minn. Dist. Ct. Hennepin Co. Nov. 16, 2009).  Boylan Decl., Ex. C.

## A.    RSM is Likely to Succeed on the Merits

RSM is likely to succeed on the merits of its claims, which it is bringing in an arbitration proceeding, pursuant to Section 8.8 of the Agreement, and commencing before the American Arbitration Association simultaneously with this action.[3]

The Agreements are valid and enforceable contracts. *See Aries Information Sys., Inc. v. Pacific Management Sys. Corp.,* 366 N.W.2d 366, 369 (Minn. Ct. App. 1985); *Eaton Corp. v. Giere,* 971 F.2d 136, 139 (8th Cir. 1992).  There is no dispute that Defendants executed them.  Thus, the only issue is whether the Non-Solicitation Covenants are enforceable.

---

[3]  In the arbitration, RSM is seeking damages for breach of contract, tortious interference with business relationships and a permanent injunction.  RSM also seeks recovery of attorneys' fees and costs pursuant to Section 6.3 of the Agreement.

Minnesota courts enforce restrictive covenants "to the extent necessary to protect a legitimate business interest." *Webb Publishing*, 445 N.W.2d at 450; *Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 534, 134 N.W.2d 892, 899-900 (1965). It is well-recognized that "[e]mployers have a legitimate interest in protecting themselves against 'the deflection of trade or customers by the employee by means of the opportunity which the employment has given him.'" *Webb Publishing*, 426 N.W.2d at 450 (citation omitted). In the present case, the Non-Solicitation Covenants protect RSM from Defendants' use of the relationships and information they acquired during their employment at RSM. *See Webb Publishing*, 426 N.W.2d at 450 (employer had legitimate interest in protecting itself, through a restrictive covenant, from solicitation by former employee of employer's clients, with whom he had had close relationships). Further, as set forth in Section 5.5 of the Agreement, RSM seeks to protect its trade secrets and "Confidential Information."

There was, moreover, adequate consideration for the Non-Solicitation Covenants. The Agreements contained a key change from Defendants' previous employment agreements in that they narrowed the scope of clients that could not be solicited. "Protected Client," in the Agreement , is defined to cover any client serviced by the RSM offices to which the Defendants, within the two-year period prior to their leaving RSM, were assigned or any client they themselves had serviced or to whom they had been introduced or obtained confidential information concerning. By contrast, in Epp's previous agreement, the term "Nonsolicitation Clients" covered all clients of the employer at any time during the term of Epp's employment, and, in Bernhard's previous

agreement, the non-solicitation provision covered "any of the clients of [the employer] or its affiliates." (McKenzie Aff., ¶ 3.) Thus, the Agreements provided Defendants with "real advantages" that served as consideration for the Non-Solicitation Covenants. *See Davies & Davies Agency, Inc. v. Davies*, 298 N.W.2d 127, 131 (1980).

The Non-Solicitation Covenants, moreover, are reasonable. They cover no more than necessary: (i) clients that were serviced by RSM's New York Office or by Defendants or were introduced to Defendants during the two-year period prior to leaving RSM; (ii) clients about whom Defendants obtained or created confidential information; (iii) employees of the above-referenced clients who selected RSM to provide services; or (iv) any prospective client known to Defendants to have been actively solicited by RSM within the two-year period prior to their leaving RSM. (Agreements, Section 5.2(a).)

The reasonableness of a temporal restriction depends on "the nature of the employee's work, the time necessary for the employer to train a new employee, and the time necessary for the customers to become familiar with the new employee." *Overholt Crop Ins. Service Co. v. Bredeson*, 437 N.W.2d 698, 703 (Minn. Ct. App. 1989). *See also Iowa Glass*, 338 N.W.2d at 382. In the present case, the Defendants were long-time employees and partners of RSM, having worked at its New York office for between 12 and 25 years. They had supervisory responsibility for, and close relationships with, many of the clients of RSM's health care practice. A two-year temporal restriction is necessary to protect RSM. *See Overholt*, 437 N.W.2d at 704 (two-year restriction on solicitation of clients reasonable where former employee had worked for employer over many years and had established "good" relationships with the employer's clients); *Moore Business*

*Forms*, 953 F. Supp. at 1064-65 (two-year restriction reasonable under Iowa law); *Curtis 1000*, 878 F. Supp. at 1269 (same). *See also McGladrey & Pullen v. Epp, et al.*, Boylan Decl., Ex. B, at 8-9 (finding, under Iowa law, Non-Solicitation Covenants identical to those at issue in the present case to be reasonable in time and scope and necessary in light of the fact that "[t]he nature of the [Defendants'] relationships with the protected clients presents the very real risk that they possess the opportunity to usurp and damage M&P's goodwill, and that they possess the capability of convincing M&P's existing clients to follow them to their new employment.").[4]

Defendants have taken the position that, because RSM's claims are subject to arbitration under the Agreements, this Court may not grant injunctive relief. *See, e.g.*, *Manion v. Nagin*, 255 F.3d 535 (8th Cir. 2001) (affirming decision declining to issue preliminary injunction in part because it could not grant the motion "without interpreting the Agreement [at issue] and entangling itself in the merits"). *Manion* and similar decisions, however, rest upon considerations that are not present in the instant case. As set forth in *Peabody Coalsales Co. v. Tampa Elec. Co.*, 36 F.3d 46, 47 (8th Cir. 1994), the underlying concern about "inject[ing] the court into the merits of issues more

---

[4] That Epp, Bernhard and Schwartz were each terminated is irrelevant to RSM's ability to enforce the Non-Solicitation Covenants. The Non-Solicitation Covenants, indeed, provide that the restrictions apply upon the termination of the managing director "with or without Cause." (Agreements, Section 5.2(a).) As the cases make clear, moreover, an employer may enforce restrictive covenants against terminated employees. *See, e.g, Millard v. Electronic Cable Specialists and Elect. Conservation Systems, Inc.*, 790 F. Supp. 857 (D. Minn. 1992) (granting preliminary injunction in favor of employer seeking to enforce restrictive covenant against terminated former employee); *Thermorama, Inc. v. Buckwold*, 267 Minn. 551 (Minn. 1964) (same); *Webb Publishing*, 426 N.W.2d at 447 (same).

appropriately left to the arbitrator" stems from the "unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts.  [citation omitted]."

Thus, if a district court were to become embroiled in the merits of the dispute by, for example, interpreting contracts, *see, e.g., SchlumbergerSema, Inc. v. Xcel Energy, Inc.*, 2002 U.S. Dist. LEXIS 22496, *6-7 (D. Minn. Nov. 18, 2002), the arbitration would be delayed and the parties' intent to have their dispute determined by arbitrators would be frustrated.  *Peabody*, 36 F.3d at 48.  *See Manhattan Group, LLC v. Automoblox Co., LLC,* 2010 U.S. Dist. LEXIS 140162, *20 (D. Minn. Dec. 30, 2010) (court noted that it would need to consider the defendant's claim "that it was correct to 'cancel' the License Agreement … because of [the plaintiff]'s alleged fraud," an inquiry that would require "review of the fraud claim and the parties' conduct between 2008 and 2010"); *Clarus Medical, LLC v. Myelotec, Inc.*, 2005 U.S. Dist. LEXIS 30540, *13 (D. Minn. Nov. 30, 2005) (court noted that it would be required to "interpret terms of the License, …whether the parties' actions justified [the defendant]'s assertions of breach and termination and thus justified [defendant]'s alleged use of the Marks and marketing of the Products covered by the License"); *Schlumberger*, 2002 U.S. Dist. LEXIS 22496, *6-7 (court noted that it would be required to interpret the agreement at issue to determine "whether or when tolling the cure period for an 'Event of Default' is appropriate").

In stark contrast to such decisions, which involved contested facts that would necessitate prolonged judicial consideration, the present case involves no factual issues the Court would need to analyze or determine.  The Non-Solicitation provisions of the

15

Agreement are clear on their face and Defendants do not contend otherwise. Defendants do not dispute entering into the Agreements and, indeed, do not contest the validity of the Non-Solicitation Covenants or other provisions of the Agreements. Most significantly, Defendants *admit* violating the Non-Solicitation Covenants by servicing Protected Clients at Cohn. In their Memorandum of Law in Support of Defendants' Motion to Dissolve Temporary Restraining Order (Doc. No. 4 (referred to hereinafter as "Def. Mem.")), they state unequivocally, for example, that:

- "The Defendants have been working at J.H. Cohn since February 7, 2011. For over a month, they have been servicing long-standing clients on time-sensitive matters involving audit and consulting work." (Def. Mem. at 13.)

- "[T]he Defendants simply have gone about pursuing their chosen professions, servicing their long-standing clients and supporting their families." (Def. Mem. at 15.)

- "To enjoin the Defendants at this late date from continuing to service those clients would adversely impact the clients Defendants have been servicing for months." (Def. Mem. at 16.)

The Court, faced with such undisputed facts, will not need to "embroil" itself in the merits, whether by interpreting contractual provisions or determining contested issues. The contractual provisions are clear, as are the Defendants' breaches. Thus, the Court can expeditiously rule on this motion without in any way delaying the arbitration proceedings or usurping the role of the arbitrator. In doing so, the Court would act in accordance with the parties' desire to have a "speedy" resolution of their dispute in arbitration while at the same time giving effect to the parties' intention—expressed equally clearly—to permit RSM to obtain a preliminary injunction to maintain the *status*

16

*quo* pending the arbitration.  Any other result, indeed, would effectively eviscerate multiple provisions in the Agreements, including section 6.1 (RSM may enforce Agreement through injunction and damages are "in addition to, and not in lieu of," such other remedy); section 6.2 (Managing Director waives any requirement that RSM prove irreparable injury or lack of an adequate remedy at law) and section 8.5 (claims for alleged violations of the Non-Solicitation Covenants, *inter alia*, "may be brought immediately in court…for the purpose of obtaining preliminary injunctive relief (*e.g.*, temporary restraining orders and/or preliminary injunctions)), and improperly hamstring this Court in correcting clear violations which, as the Missouri and Minnesota state courts have determined, justice requires.

Accordingly, RSM is likely to succeed on the merits of its claims.

### B.    RSM Would Suffer Irreparable Harm In the Absence of an Injunction

The harm to RSM in the absence of an injunction would be irreparable. Irreparable harm, in the context of a non-solicitation covenant "can be inferred from the breach of a restrictive covenant if the former employee came into contact with the employer's customers in a way which obtains a personal hold on the good will of the business."  *Webb*, 426 N.W.2d at 448; *Creative Communications Consultants, Inc. v. Gaylord*, 403 N.W.2d 654, 657 (Minn. Ct. App. 1987).

In the present case, the activities of the Defendants are wrongful and in breach of the Non-Solicitation Covenants in their Agreements in that they have solicited RSM clients and employees and are servicing former RSM clients they had previously serviced while at RSM.  RSM has already lost at least seven health care clients and is in danger of

7508408v1

losing more since Defendants have admitted their activities.  If Defendants, who are threatening to divert an entire practice area, continue to solicit and service clients and divert employees whom RSM developed, RSM stands to lose not only significant revenue, but also irreparable injury in the loss of substantial customer goodwill RSM developed and maintained, with significant time and expense, over a period of many years and damage to its business reputation.  *See, e.g., Webb Publishing*, 426 N.W.2d at 448-49 (Minn. Ct. App. 1988) (irreparable harm found where former employee who had worked closely with clients of former employer and, in violation of the restrictive covenant in his employment agreement, had solicited those clients and successfully induced one of them to hire his new company, threatening loss of significant revenues and damage to business reputation of former employer).  *See also Thermorama, Inc. v. Buckwold*, 267 Minn. 551, 552-53, 125 N.W.2d 844, 845 (1964) (systematic solicitation of former employer's customers supports inference of irreparable harm).[5]

Indeed, in *McGladrey & Pullen v. Epp, et al.*, the Court made explicit findings of fact and conclusions of law upon a written record only.  It found—on facts identical to those in the present case—that "defendants do not seriously dispute that, over the past several weeks, defendants have been soliciting M&P clients they previously serviced and are inducing and/or attempting to induce such clients to terminate their relationship with M&P and to engage their new employer, in violation of the agreements."  Order, Boylan

---

[5]   Indeed, in the Agreements, Defendants expressly agreed to "waive[] any requirement that [RSM] prove that any threatened or actual breach, violation or failure to comply fully with the terms, provisions or conditions of this Agreement will cause irreparable injury or that there is no adequate remedy at law."  (Agreements, Section 6.2.)

7508408v1

Decl., Ex. B, at 8.  It also found that "[d]efendants have also been contacting M&P employees about leaving their employment with M&P and joining their new employer." *Id.*  Thus, the Court concluded::

> [T]he court concludes that harm to M&P in the absence of an injunction would be irreparable.  Defendants have solicited M&P clients and employees and are servicing former M&P clients they had previously serviced while at M&P.  M&P has already lost at least seven health care clients and is in danger of losing more.  If defendants continue to divert clients and employees whom M&P developed, M&P stands to lose not only significant revenue, but also irreparable injury in the loss of substantial goodwill M&P developed and maintained, with significant time and expense, over a period of many years and damage to its business reputation.

Order, Boylan Decl., Ex. B at 9

Similarly, in 2009, the *RSM McGladrey v. Regan* court found, in a case involving facts very similar to those involved in the present case:

> RSM will suffer irreparable harm because Defendants will continue to service Protected Clients in violation of their Agreements, and Plaintiff will lose the substantial good will it developed as well as damage to its business reputation.  There is no adequate remedy at law for the loss of those intangible assets where Defendants, high level employees who had a personal influence over RSM's clients, leave RSM under circumstances that reflect their willingness to transfer their book of business to RSM's chief competitor in the area.

Decision, Boylan Decl., Ex. C at 17.[6]

Accordingly, this factor supports the granting of a preliminary injunction.

## C.    The Balance of Harms Favors RSM

By contrast, Defendants will not be harmed by being required to abide by the terms of their Agreements. They can solicit and service non-RSM clients and assist their new employer with existing clients. They would certainly not be precluded from practicing their profession and benefitting from their experience in a highly specialized area of practice even if they are unable to solicit RSM clients or employees or otherwise violate the terms of their agreements with RSM. Moreover, they specifically acknowledged in the Agreement that the Non-Solicitation Covenants were "reasonable, necessary and essential to the preservation of the business of [RSM] [and] that such

---

[6] The existence of liquidated damages provisions in the Agreements (section 5.2(b)1(i), (ii)) does not affect the availability of preliminary injunctive relief. *See, e.g., Cherne Industrial, Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 95 (Minn. 1979) ("a plaintiff who successfully establishes that the defendant has breached an employment contract … may obtain both injunctive relief and damages."); *Tenant Constr., Inc. v. Mason*, 2008 Minn. App. Unpub. LEXIS 133, *3-14 (Minn. Ct. App. Feb. 5, 2008) (both temporary injunctive relief and liquidated damages appropriate where employer sought to enforce a non-competition agreement against former employee); *Webb Publishing Co.*, 426 N.W.2d 445 (affirming temporary injunction where the plaintiff employer also sought damages against a former employee). *See also McGladrey & Pullen v. Epp, et al.*, Boylan Aff., Exh. A, at 10 (rejecting argument by Epp, Bernhard and Schwartz that the existence of liquidated damage provisions in the M&P Agreements precludes injunctive relief, finding that "money damages may not fully compensate a movant for less tangible injuries" [citation omitted] such as injury to goodwill and business relationships); *RSM McGladrey v. Regan*, Boylan Decl., Ex. C, at 15-16 (rejecting the defendants' contention that liquidated damages provisions preclude injunctive relief, finding that neither the Minnesota case law nor the Agreements, which "also contemplate the necessity of obtaining injunctive relief to prevent high level personnel like the Defendants from servicing or soliciting the clients with whom they had a relationship while working for RSM," supported the argument).

restrictions will not unduly restrict Managing Director in earning a livelihood in the event of Managing Director's termination from [RSM]."   (Agreements, Section 5.1.)   The Agreements also do nothing to prevent defendants from practicing in their given profession, and working for their new employer, in a manner that does not harm RSM's goodwill and protected client relationships.  *See McGladrey & Pullen v. Epp, et al.*, Boylan Decl., Ex. B, at 11 (finding that "any harm to defendants is outweighed by [the] harm to M&P.").

Accordingly, the balance of harms clearly favors RSM.

### D.    Public Policy Supports a Preliminary Injunction

Public interest is served by upholding valid restrictive covenants because breach of such covenants results in unfair competition.  *See N.I.S. Corp. v. Swindle*, 724 F.2d 707, 710 (8th Cir. 1984); *Millard v. Electronic Cable Specialists*, 790 F. Supp. 857, 860 (D. Minn. 1992).   Moreover, public interest supports enforcing and providing judicial remedies for breaches of contractual duties.  *See Cherne Industrial, Inc. v. Grounds Associates, Inc.*, 278 N.W.2d 81, 94 (1979).  *See also McGladrey & Pullen v. Epp, et al.*, Boylan Decl., Ex. B, at 11-12 (finding, under Iowa law, that the public interest supports a temporary injunction to enforce the same Non-Solicitation Covenants at issue in the present case, both in "enforc[ing] a valid restrictive clause in a contract" [citations omitted] and in "protecting against predatory business practices like raiding another business for its employees and interfering with an existing business' goodwill and customer relationships.").   Finally, in all likelihood, there will be no administrative or supervising burden placed on this Court.   RSM is willing to work as swiftly as possible

and is simultaneously filing a demand for arbitration as required under the Agreement. The Court's order enjoining Defendants can be stated in precise enough terms so that these directives should not be violated.

## CONCLUSION

For the foregoing reasons, RSM requests that the Court grant a preliminary injunction enjoining Defendants, pending the outcome of arbitration proceedings between the parties, from further soliciting and servicing Protected Clients, as that term is defined in Section 5.2(a) of the Agreements, and soliciting employees in violation of the Non-Solicitation Covenants and from otherwise violating the terms of their Agreements with RSM.

Dated:  March 15, 2011

    s/ Arthur G. Boylan
Arthur G. Boylan (#338229)
LEONARD, STREET AND DEINARD
    Professional Association
150 South Fifth Street, Suite 2300
Minneapolis, MN  55402
Telephone:  612.335.1500
Fax:  612.335.1657

and

Lynne M. Fischman Uniman
Anju Uchima
ANDREWS KURTH LLP
450 Lexington Avenue
New York, NY 10017
    *Pro Hac Vice Motion Pending*

**ATTORNEYS FOR PLAINTIFF**

7508408v1