**EXHIBIT A, PART 2**

(iii) Partner becomes employed or retained (as an independent contractor, consultant, partner, or otherwise) by the Partnership, and/or RSM McGladrey, and/or a subsidiary or affiliate of either of them; or

(iv) in the case of a sale or other disposition of a significant part of the assets of an office, line of business, or economic unit of the Partnership and/or RSM McGladrey, Partner becomes employed or retained (as an independent contractor, consultant, partner, or otherwise) by the sold or reorganized entity, successor or buyer, or subsidiary or affiliate of the above, or himself performs services for any client of such office, line of business or economic unit.

(d)     A withdrawing Partner shall lose his right to make any elections permitted by this Section 13.1 unless such Partner makes written claim with a director, other than such Partner, specifying his election to receive the rights under either Sections 13.1(b), 13.1(c)(1) or 13.1(c)(2), within thirty (30) days after receiving notice of the event which causes the Partner to claim to be Adversely Affected.

(e)     This Section 13.1 applies to a Partner whose interest in the Partnership is terminated by the Board without Cause and does not apply to any Partner whose interest in the Partnership terminates in any other manner whatsoever, including but not limited to termination for Cause, dissolution, resignation, retirement, termination or resignation due to total or partial disability, or death.

## ARTICLE 14
### Certain Covenants of Partner

14.1     Certain Acknowledgments. Partner acknowledges and agrees as follows in exchange for valuable consideration which Partner acknowledges:

(a)     The Partnership has obtained and will maintain an advantage over its competitors as a result of name, location and reputation developed at great expense.

(b)     Partner's relationship with the Partnership involves the creation and understanding of, and access to, certain trade secrets and confidential information pertaining to the

property, business and operations of the Partnership its affiliates, clients, and prospective clients.

(c)    Partner recognizes the value of the special, unique and extraordinary knowledge and skill required to accept, undertake and perform the type of work normally undertaken and performed by Partner, the Partnership and the Partnership's other employees and agents.

(d)    Partner's solicitation of certain clients, prospective clients, employees, and relationships of the Partnership and/or its affiliates following the termination of Partner's relationship with the Partnership hereunder would impair the operation of the Partnership and/or such affiliates beyond that which would arise from the competition of an unrelated third party with similar skills.

(e)    All clients, and certain prospective clients, of the Partnership, regardless of when or by whom acquired, are Partnership assets and not assets of the individual Partner.

(f)    Partner has carefully considered the restrictions contained herein, and Partner specifically agrees that same are reasonable and necessary and essential to the preservation of the business of the Partnership, that such restrictions will not unduly restrict Partner in earning a livelihood in the event of Partner's termination from the Partnership, and that such restrictions shall survive termination of this Agreement and termination for any reason of Partner as a partner in the Partnership.

(g)    Partner's agreements and covenants under this Article 14 are an essential part of the inducement to the Partnership to enter into this Agreement.

(h)    Considerable time, effort, and monies have been expended by the Partnership and its Predecessors (defined below) over the years to cultivate and acquire clients of the Partnership, and clients and certain prospective clients, among other assets, represent the Partnership's intangible value. "Predecessor(s)" shall mean (i) any and all entities, the stock, other ownership interest or the assets of which have been acquired by the Partnership, and (ii) any and all entities, the stock, other ownership interest or the assets of which have been acquired by an entity described in Section 14.1(h)(i).

(i)    Partner acknowledges and agrees that he owes a fiduciary duty to the Partnership and any Predecessors with which he was associated immediately before joining the Partnership, and that during Partner's association with the Partnership and such

Predecessor(s) he has abided by, and will continue to abide by, such duty, including but not limited to abiding by the restrictions contained in this Article 14 during his association with the Partnership and for the specified periods thereafter.

14.2    Certain Restrictions on Subsequent Activities.  In light of the Partner's acknowledgment of the facts set forth in Section 14.1 of this Agreement and in consideration of the Partner's initial and continued status as a partner of the Partnership, each Partner hereby agrees to be bound by the following covenants.  Each Partner also acknowledges that in the event he should breach any of the covenants contained in this Section 14.2, any assessment of the damages suffered by the Partnership would be difficult to quantify and would, therefore, likely be inadequate to compensate the Partnership's losses.  Therefore, each Partner hereby agrees that the liquidated damages calculated herein are fair and reasonable estimates of the Partnership's damages in the event of his breach and therefore agrees to be bound by such calculations of his liability for liquidated damages in the event that he breaches such covenants.

(a)    Solicitation of Protected Clients.  Except as provided in Section 13.1(b) or 13.1(c)(1), each Partner covenants and agrees that upon termination as a Partner of the Partnership for whatever reason, with or without Cause, and regardless of by whom, that the Partner shall not for himself, or for others, either directly or indirectly, in his individual capacity, or as a partner or other equity holder, employee, independent contractor or agent of another, or in any other capacity whatever for a period of two (2) years after his termination date:

1.    Solicit, or attempt to solicit, divert or attempt to divert, or take away or attempt to take away, or accept from any Protected Client (defined below), any business of a type similar to that provided or planned to be provided by the Partnership to any Protected Client.

2.    Render any services to or sell any products to any Protected Client, unless such services or products or similar services or products are not provided to any Protected Client by the Partnership and are not planned to be offered by the Partnership to any Protected Client.  For purposes of this Article 14, services shall be considered planned to be offered by the Partnership if the following conditions are satisfied:  (1) the Partnership plans to offer such services within six (6) months after Partner's termination, and (2) Partner participated in Partnership's or a Predecessor's planning of such services. Nothing in this Section 14.2(a)(2) shall prevent Partner from performing such services as an employee of a Protected Client, unless that client's business is

- 24 -

to provide services similar to those provided by the Partnership or unless such services are being provided to multiple employers.  For purposes of this Article 14, the term "Protected Client" means:

(i)     Any client, customer or account serviced by an office of the Partnership or of a Predecessor to which the Partner was assigned during the two (2) year period prior to the effective date of termination; or

(ii)    Any client, customer or account of the Partnership or a Predecessor served or counseled by the Partner during the two (2) year period prior to the effective date of Partner's termination; or

(iii)   Any client, customer or account serviced by the Partnership or a Predecessor who was introduced to the withdrawing Partner during the two (2) year period prior to Partner's withdrawal; or

(iv)    Any client, customer or account about whom Partner or Partner's supervisees obtained or created Confidential Information (as defined in Section 14.5); or

(v)     Any employee(s) of a Protected Client (as defined in  subsections (i) – (iv) above) who selected, or had substantial input into the selection of, the Partnership to provide services to such Protected Client; or

(vi)    Any prospective client, customer or account that was actively solicited by the Partnership within two (2) years prior to Partner's termination, provided Partner knew or reasonably should have known of such solicitation prior to Partner's termination.

(b)     Certain Monetary Remedies for Violation of Sections 14.2(a).

1.      <u>Liquidated Damages.</u>

(i)     If Partner breaches any term of Section 14.2(a)(1), 14.2(a)(2)(i), (ii), (iii) and/or (iv) and such breach(es) result(s) in the Partnership's loss of some or all of a Protected Client's business to such Partner or any person or entity with whom or which the terminated Partner becomes employed or associated ("New Organization"), then the

Partner shall pay the Partnership as liquidated damages and not as a penalty an amount equal to one hundred fifty percent (150%), without interest, of the dollar amount of Net Services (as hereafter defined) performed by the Partnership and its Predecessors for such Protected Client during the twelve (12) month period ending on the last date the Partnership or the Predecessor performed services for such Protected Client.

For purposes of this Agreement, "Net Services" shall be calculated in accordance with the Partnership's policies and procedures and shall be determined on a full accrual basis in accordance with the Partnership's then current method of accounting.

(ii)     If Partner breaches any term of Section 14.2(a)(2)(v) and/or (vi) and such breach(es) result(s) in such Partner or New Organization obtaining business that the Partnership had sought or had a reasonable probability of receiving, then the Partner shall pay the Partnership as liquidated damages and not as a penalty an amount equal to fifty percent (50%) of the greater of (aa) the fees or compensation received by the terminated Partner or any New Organization from such Protected Client during the two (2) year period after Partner's termination date, without interest, or (bb) the reasonable value of the services provided by the Partner or New Organization to the Protected Client during the two (2) year period after Partner's termination date, without interest.

2.     Payment of Liquidated Damages.  Partner shall promptly notify the Partnership of, and account for, any and all amounts due under this Article 14. Partner shall pay all liquidated damages due pursuant to Section 14.2(b)(1)(i) within thirty (30) days after the Partner or New Organization is engaged by or starts working for the Protected Client, whichever occurs sooner. Partner shall pay liquidated damages due pursuant to Section 14.2(b)(1)(ii) on a quarterly basis within forty-five (45) days of the end of each calendar quarter. The Partnership shall have the right and remedy to, from time to time, (i) require Partner and/or New Organization to account for, and (ii) inspect and audit Partner's and/or New Organization's books to

determine, the value of all services provided by Partner and/or New Organization to Protected Clients during the two (2) year period immediately following Partner's termination from the Partnership.

    3.    <u>Right of Offset</u>. The Partnership shall have the right (but not the obligation) to offset any amount due from such Partner against any other amounts or accounts due to the Partner by the Partnership.

(c)    <u>Employment of Protected Personnel</u>. Partner covenants and agrees that in the event of his termination from the Partnership for any reason whatsoever, or under any circumstance, with or without Cause, and regardless of by whom, that for a period of two (2) years following the effective date of such termination (the "Prohibited Period"), such Partner shall not, without the prior written consent of the Partnership, solicit, induce or in any manner encourage any Partner or employee of the Partnership (the "Protected Personnel") to terminate his position with the Partnership. Each Partner covenants that he will not during the Prohibited Period offer, or cause to be offered, a position of employment or affiliation as a partner or other equity holder, agent, representative or independent contractor, or in any other capacity, to any member of the class of Protected Personnel who is an employee or Partner of the Partnership on the date on which such Partner was terminated, or was so employed or affiliated at any time during the six (6) month period immediately prior to the effective date of such termination

(d)    <u>Certain Monetary Remedies for Violation of Section 14.2(c)</u>.

    1.    <u>Liquidated Damages</u>. If Partner breaches any term of Section 14.2(c) and such violation results in the loss to the Partnership of the services of one or more person(s) who is (are) considered to be Affected Personnel (as hereafter defined), then such Partner will pay to the Partnership, as liquidated damages, the greater of (x) Fifty Thousand Dollars ($50,000) or (y) one half (50%) of each Affected Personnel's base compensation for the twelve (12) months prior to the termination of such Partner's employment. For purposes of this Section 14.2(d), "Affected Personnel" shall mean those members of the Protected Personnel who are induced or encouraged to terminate their employment with the Partnership or who are offered a position by such Partner or a New Organization, directly or indirectly, in violation of Section 14.2(c).

- 27 -

2.   Payment of Liquidated Damages.  Partner shall promptly notify the Partnership of, and account for, any and all amounts due under this Article 14.  Partner shall pay all liquidated damages due under this Section 14.2(d) within thirty (30) days after the Affected Personnel terminates his (their) employment with the Partnership.

3.   Right of Offset.  The Partnership shall have the right (but not the obligation) to set off any amount due from such Partner against any other amounts or accounts due to the Partner by the Partnership.

14.3   Tolling of Covenant Period.  If Partner violates any of the provisions of Section 14.2, the respective time periods specified in Section 14.2 shall be extended for a period of time equal to the period of any such violation(s).

14.4   Duty to Cooperate in Defense of Claims.  Any current, retired or terminated Partner, in consideration of this Agreement and the mutual promises contained herein, shall have a continuing obligation to cooperate with the Partnership in connection with the defense of any claim involving the Partnership and/or its Partners, employees, directors or agents and promptly notify the Partnership of any actual or suspected claim.  In the event a claim is asserted against the Partnership, Partner (whether or not then still employed by the Partnership) shall assist and cooperate with the Partnership in good faith and in such manner as is reasonably possible in developing the information, or providing the statements, documents or testimony reasonably required by the Partnership to properly respond to or defend such claim.  The Partnership shall reimburse a retired or terminated Partner for his reasonable expenses (excluding attorneys' fees except as set forth in Section 8.13) incurred cooperating with Partnership pursuant to this Section 14.4.  The Partner shall take no action at any time to voluntarily assist the assertion or development of a third party's claim against the Partnership and/or its Partners, employees, directors, or agents; provided, however, that nothing herein shall be construed to prevent Partner from testifying truthfully and completely at an administrative hearing, a deposition, or in court in response to a lawful subpoena or as otherwise required by law, in any litigation or proceeding involving the Partnership.

14.5   Nondisclosure.  Partner shall not at any time or in any manner, directly or indirectly, use or disclose to any party other than the Partnership any trade secrets or Confidential Information (defined herein) learned or obtained by Partner while a Partner or employee of the Partnership.  As used herein, the term "Confidential Information" includes information disclosed to or known or created by Partner (whether before or after the date of this Agreement) as a consequence of Partner's position with the Partnership or a Predecessor

- 28 -

and not generally known in the industry in which the Partnership is engaged and that in any way relates to the products, processes, services, inventions (whether patentable or not), formulas, techniques or know-how, including, but not limited to, information relating to distribution systems and methods, research, development, manufacturing, purchasing, accounting, procedures, engineering, marketing, customers, vendors, merchandising and selling, of the Partnership, and regardless of the format in which it is presented or embodied (written, graphic, electromagnetic or otherwise). The term "Confidential Information" shall also include information regarding the clients of any person or entity for which the Partnership provides services. The term "Confidential Information" does not include information (a) which was already in the public domain through authorized disclosures by the Partnership or (b) which is disclosed as a matter of right by a third party source after the execution of this Agreement provided such third party source is not bound by confidentiality obligations in favor of the Partnership or a Predecessor.

14.6    Inventions.  Partner agrees that all inventions, discoveries, written materials, brochures, training programs, training materials, programs, seminars, and new public accounting services or products conceived of or developed by the Partner during the term of his status as a partner or employee of the Partnership, whether alone or jointly with others and whether during working hours or otherwise, which relate to the business of the Partnership or any affiliate of the Partnership, shall be the Partnership's exclusive property.  Partner shall (a) promptly disclose in writing to the Partnership each invention, written material, brochure, training program, training material, program, seminar, and new public accounting services or products conceived by or developed by Partner during the term of his status as a Partner and employee of the Partnership, (b) assign all rights to the same to the Partnership, and (c) assist the Partnership in every way to obtain and protect any patents, trademarks, copyrights or service marks on the same.  Partner is hereby notified that the above agreement to assign inventions to the Partnership does not apply to any invention for which no equipment, supplies, facility, or Confidential Information of the Partnership's was used, which was developed entirely on Partner's own time, and (a) which does not relate:  (i) directly to the Partnership's business; or (ii) to the Partnership's actual or demonstrably anticipated research or development; or (b) which does not result from any work performed by Partner for the Partnership.

14.7    Copyrights.  Partner agrees that any articles, computer, software, and/or internet applications or other work of authorship (hereinafter referred to as "Works") prepared by Partner for the benefit of, or for distribution, use by, or publication to, the Partnership or its clients, or prepared at the request of the Partnership or its clients (as well as Partner's contributions to any other Works relating to the Partnership), shall be considered "work made for hire" under U.S. Copyright law and that all such Works shall belong to the Partnership.  To the extent that any such Works cannot be considered a "work made for hire," Partner agrees to disclose and hereby assigns to the Partnership all right, title, and interest in and to such Works, and agrees to assist the Partnership by executing any such documents or applications as may be useful to evidence, register,

or perfect such ownership of such Works. To the extent such Works are based on preexisting work in which Partner has an ownership interest, Partner grants the Partnership all right, title, and interest in such Works free and clear of any claim based on the preexisting work.

14.8    Limitations on Enforcement. If any restriction set forth in this Article 14 is found by any tribunal of competent jurisdiction to be unenforceable, invalid, or overly broad, it is the intention of both Partner and the Partnership that the tribunals modify such restriction to make it enforceable to the maximum extent allowable under the law. If the restriction cannot be so modified, then the tribunal shall sever such restriction and the other parts of this Agreement shall remain enforceable. It is further the intention of Partner and the Partnership that, if any restriction in this Article 14 is found by any tribunal of competent jurisdiction to be lacking consideration, then Partner shall be bound by, and the tribunal shall enforce, such comparable restriction contained in the most recent prior partnership agreement that was supported by adequate consideration and executed by the Partner and the Partnership.

## ARTICLE 15
### Certain Remedies

15.1    Specific Performance. If Partner shall at any time threaten to or breach, violate or fail to comply fully with any of the terms, provisions or conditions of this Agreement, the parties intend that the Partnership shall be entitled to equitable relief against Partner by way of injunction without having to first file a mediation or arbitration (any such injunction shall be in addition to, but not in substitution for, any and all other relief to which the Partnership may be entitled either at law, in equity, in arbitration, or hereunder including, but not limited to, the payments provided in Sections 14.2(b) and (d) to restrain such threatened or actual breach or violation or to compel compliance fully with the terms, provisions or conditions per this Agreement). Damages and right of offset pursuant to Sections 14.2(b) and (d) shall be in addition to, and not in lieu of, any other remedy of the Partnership.

15.2    No Proof of Irreparable Harm; Presumption; Waiver. In any proceeding, whether in equity, at law or in arbitration, Partner specifically waives any requirement that the Partnership prove that any threatened or actual breach, violation or failure to comply fully with the terms, provisions or conditions of this Agreement will cause irreparable injury or that there is no adequate remedy at law. In the event Partner serves as an employee, independent contractor, agent or in any other capacity for any other firm within the two (2) year period following termination of a Partner's interest in the Partnership for any reason and such firm provides any services or sells any product to any Direct Client (as defined below), if such services or products are then offered by or planned to be offered by the Partnership, Partner agrees that there shall be a presumption that the Partner is responsible for such firm's activities in violation of this Agreement. Such presumption shall apply for purposes of the Partnership obtaining injunctive or any other equitable relief. "Direct Client" means

any client, customer or account of the Partnership, or any of its subsidiaries or of a Predecessor that was serviced or counseled by the Partner at any time during the two (2) year period prior to the termination of the Partner's interest in the Partnership. Partner also agrees not to raise as a defense in any such proceeding any allegation: (a) that any of the provisions of Articles 14 and 15 are either unnecessary, unreasonable or unenforceable, that any of them illegally restrain trade, competition or any personal rights of Partner, or (b) that payments made by the Partnership subsequent to gaining knowledge of a violation of this Agreement prejudices the Partnership's rights to enforce the Agreement or recover payments made, or (c) that the non-enforcement of the Partnership's rights to enforce the Agreement or recover payments made or that the non-enforcement of the Partnership's rights with regard to one Partner or one act prejudices the Partnership's rights and remedies under this Agreement, all of which are in addition to all rights and remedies to which the Partnership is or shall be otherwise entitled at law or in equity. The Partnership shall not be required to post bond in any proceeding to enforce the provisions of Article 14 and/or 15 hereof.

15.3    Recovery of Costs.  The parties acknowledge and agree that, if Partner breaches or threatens to breach Article 14, the Partnership shall be entitled as a matter of right to recover from Partner the costs incurred by the Partnership in enforcing the terms of Article 14, including but not limited to recovering its reasonable attorneys' fees, costs, and expenses, in addition to any other remedies available at law or equity.

## ARTICLE 16
### Leave of Absence and Partial Retirement

16.1    A Partner may obtain a leave of absence, full or part time, from the Partnership for a limited period, or partially retire under the terms approved by the Board, if considered in the best interest of the firm or as required by law.

## ARTICLE 17
### Termination

17.1    Methods of Termination.  A Partner's interest in the Partnership may be terminated as follows:

    (a)    By the Partnership for Cause, upon the delivery of written notice thereof to Partner. For purposes of this Agreement, "Cause" shall mean the occurrence of any one of the following on the part of the Partner:

        1.    Partner's conviction or a plea of guilty or *nolo contendere* to a crime involving moral turpitude or a crime providing for a term of imprisonment.

- 31 -

2.   Partner's engagement in willful misconduct (including but not limited to Partner's discrimination or harassment or unethical or unprofessional conduct) injurious to the Partnership, its affiliates or any of their respective reputations.

3.   Partner's breach of his fiduciary duty to the Partnership.

4.   Partner's engagement in activities which constitute a material breach of this Agreement or any other material agreement or contract between the Partner and the Partnership.

5.   Partner's gross negligence in the execution of, or Partner's willful failure to carry out, his duties and responsibilities up to the standards of performance, which could reasonably be expected from a Partner in his position.

6.   Partner's act or acts of fraud, embezzlement or dishonesty either (i) taken by the Partner to the detriment of the Partnership or (ii) by others in conspiracy or affiliation with the Partner and intended to result in enrichment or advantage to the Partner at the expense of the Partnership or with use of Partnership's assets or information.

7.   Partner's failure to maintain a license as a certified public accountant in any state where such license is required.

8.   Partner's intentional grossly negligent or repeated lack of adherence to the Rules of Conduct contained in the Code of Professional Ethics of the AICPA, as amended from time to time.

9.   Partner's material violation of the Partnership's policies or procedures, including, but not limited to, the Partnership's then effective Code of Business Ethics and Conduct, except those policies or procedures with respect to which an exception has been granted under authority exercised or delegated by the Board.

10.  Partner's failure to transition clients to others within the Partnership in the event Partner's relationship with the Partnership is ceasing for any reason, except with respect to those clients for whom the Partner has made a timely election to make payments pursuant to Section 13.1(b) or 13.1(c)(1)

- 32 -

11.   Partner's failure to pay and file on a timely basis, including extensions, complete and accurate Federal and state tax returns.

12.   Other gross misconduct which is detrimental to the best interests of the Partnership.

To prevent the inadvertent loss of rights as a result of the first occurrence of actions deemed to fall under subsections (1) through (12) above, the offending Partner shall have the right (within thirty (30) days after receipt of a written termination notice) to seek reconsideration of any such termination by the Board or such committee as designated by the Board to consider compensation issues or general policies; provided, however, such reconsideration may occur after the effective date of such termination.

(b)   By the Partnership without Cause upon written notice to the Partner.

(c)   By the Partner on sixty (60) days' written notice to the Partnership (which notice period may be accelerated at the Partnership's discretion).

(d)   Upon the death or Disability (defined herein) of the Partner. For purposes of this Agreement, "Disability" means the substantial inability, even with reasonable adjustment or accommodation, of a Partner to perform all of the Partner's essential duties because of mental or physical illness, disease or injury, for an aggregate of six (6) months in any twelve (12) month period or for a period of six (6) consecutive months. In case of Disability, the Partnership will make a termination decision on a case-by-case basis taking into consideration the totality of the circumstances. A Disabled Partner's eligibility for continued compensation or disability benefits, if any, will be determined by the Partnership's policies and benefit plans as they may exist from time to time. Nothing in this Section will prevent the Board from approving a leave of absence as defined in Article 16 or from terminating Partner's interest in the Partnership under any other basis described in this Article.

(e)   By the Partner upon sixty (60) days' written notice or such other notice that is mutually agreed upon between such Partner and the Partnership if such Partner elects to retire after attaining the eligible retirement age as established by the Board.

(f)   By express mutual written agreement signed by Partner and the Partnership.

- 33 -

17.2    Payments Upon Termination.   Upon termination, any amount due the Partnership or Partner under this Agreement shall be paid to the Partnership or the Partner or Partner's representative (as may be the case in the event of death or Disability), as set forth below:

(a)    If a Partner's interest in this Agreement is terminated pursuant to Section 17.1(a) or by the Partner pursuant to Section 13.1(b), 13.1(c)(1) or 17.1(c), the Partnership shall pay to Partner, if not already paid, any base compensation payable through the date of such termination. The Partner shall not be eligible or entitled to receive any other compensation, whether bonus or other form thereof, for the fiscal year in which such termination occurred, to the extent not theretofore paid unless such termination is effective on the last day of the fiscal year. In the event such Partner has earned a bonus for the prior fiscal year and has been terminated prior to the date such bonus is payable, the Partnership shall pay to the Partner such bonus on the date such bonus would otherwise be payable.

(b)    If a Partner's interest in this Agreement is terminated by the Partnership without Cause pursuant to Section 17.1(b) or because of the death or Disability of the Partner pursuant to Section 17.1(d) or by the Partner pursuant to Section 17.1(e), the Partnership shall pay to Partner, if not already paid, (i) any base compensation payable through the date of such termination, plus (ii) if the termination is pursuant to Section 17.1(b) the bonus for the fiscal year in which such termination occurred, but only if such termination is effective on the last day of the Partnership's fiscal year, plus (iii) if the termination is pursuant to Section 17.1(d) or 17.1(e), any bonus for the fiscal year in which such termination occurred that is approved by the Board, plus (iv) if the termination is pursuant to Section 17.1(b), the remuneration provided for in Section 13.1(c)(2) (on the dates provided in that section and only if the Partner elects the severance benefits provided in Section 13.1(c)(2)), plus (v) any bonus which the Partner has earned in the prior fiscal year if he has been terminated prior to the date such bonus is payable (any such bonus would be due on the date such bonus would otherwise be payable).

(c)    If a Partner's interest in this Agreement is terminated under Section 17.2(b) because of the death of the Partner, the Partnership shall pay to such Partner's representative those benefits which may be available under any plan or program for the payment of

- 34 -

benefits on account of the death of such Partner as is in effect on the date of such Partner's death, all in accordance with the terms and conditions of such plans (if any) as then in effect. Nothing herein shall be construed as requiring the Partnership to establish or continue any such plan.

(d) If a Partner's interest in this Agreement is terminated by the Partner pursuant to Section 17.1(e), such retired Partner shall be eligible to participate in such benefits programs as are at the time of his retirement made available to retiring Partners generally, subject to such plan's eligibility requirements and other terms and conditions, which may be amended from time to time whether before or after such Partner's retirement. Nothing herein shall be construed as requiring the Partnership to establish or continue any such plan, and termination of such plan in general shall terminate it as to any retired Partners then covered thereby. In addition, the Board may, in its discretion, permit any retired Partner to maintain his Capital Investment in the Partnership on such terms and conditions as the Board may determine in its discretion (each such retired Partner a "Retired Partner"). In addition, the Board may, in its sole discretion, permit any such Retired Partner to have such other rights, and be subject to such other obligations, as the Board may determine in its discretion. For avoidance of doubt, no Retired Partner shall be entitled to vote (or otherwise be taken into account for any other voting determinations) under the provisions of this Agreement unless the Board expressly permits otherwise.

(e) If a Partner's interest in this Agreement is terminated by mutual agreement of the Partner and the Partnership, the Partnership shall pay to Partner such payments, if any, as may be so agreed.

(f) Except as otherwise provided herein and in Article 21, no other consideration of any type will be due and owing to the Partner by the Partnership upon any termination of the Partner's interest in this Agreement.

17.3   Release of Claims. Notwithstanding the foregoing, the Partnership shall not be obligated to pay the Partner any of the payments referred to in Section 17.2(a), Section 17.2(b) or Section 17.2(c), with the exception of any base compensation earned prior to termination, unless and until the Partnership has received a Release of Claims executed by the Partner or his legal representative (and not revoked or rescinded, in whole or in part) in a form satisfactory to the Partnership.

17.4     Effect of Termination.  Upon any termination of a Partner pursuant to Section 17.1 hereof, the Partnership and the Partner shall have no further obligations under this Agreement to the other except the Partnership's obligations under the provisions of Section 17.2 and Article 21 and Partner's obligations under the provisions of Section 13.1 and Section 14.2, which shall continue in full force and effect for the terms specified in such provisions, the Partner's obligations under and the provisions of the remainder of Article 14, Article 15, Article 17, Article 18, Section 24.2 and Section 24.9 which shall continue in full force and effect indefinitely and Partner's obligation to effect a smooth transition of the clients to other personnel within the Partnership.

17.5     Continuing Obligations.  All records, files, lists, including computer generated lists, drawings, documents, equipment and similar items relating to the Partnership's business that Partner shall prepare or receive from the Partnership shall remain the Partnership's sole and exclusive property.  Upon termination of a Partner's interest in the Partnership, the Partner shall return to the Partnership all property of the Partnership in his possession.  Partner further represents that Partner will not copy or cause to be copied, or print out, or cause to be printed out any software, documents or other materials originating with or belonging to the Partnership.  Upon termination of Partner hereunder, Partner agrees that (a) he will not retain in Partner's possession any such software, documents or other materials and (b) he will take all reasonable steps necessary to effect a smooth transition of clients and ongoing work to others within the Partnership as the Partnership may request.

## ARTICLE 18

### Restrictions on Actions of Partners

18.1     Borrowings.  No Partner shall make or endorse any note, or procure money upon the written promise of the Partnership, or discount any notes or other obligations of the Partnership, or mortgage, or encumber Partnership property except as authorized under authority granted by the Board.

18.2     Pledging Partnership Interest.  No Partner shall sell, assign, pledge or grant a security interest upon any part of his interest in the Partnership, nor shall such Partner enter into any agreement as a result of which any other person may acquire any ownership or security right with respect to such interests.

## ARTICLE 19

### Bankruptcy of a Partner

19.1     If any Partner shall file a voluntary petition in bankruptcy or be adjudicated as bankrupt or insolvent, or take proceedings for liquidation by arrangement or composition with his creditors, thereupon such Partner shall be considered to have voluntarily terminated his Partnership relationship on the date of such filing, adjudication or initiation of such arrangement or proceedings, whichever is earlier, in the same manner as

though such Partner had previously delivered his timely notice of termination under Section 20.2(c) applicable to such date, or by the waiver of such notice by the Board, and:

(a)     The Partnership shall be dissolved as to the Partner;

(b)     The Partner or the Partner's trustee in bankruptcy or his assignees shall have no rights against the remaining Partner or Partners or Partnership or its assets, except such rights as the Partner would have upon voluntary termination; and

(c)     The Partnership shall have a lien upon the interest of each Partner to secure payment of any obligation of such Partner to the Partnership.

ARTICLE 20

Dissolution and Liquidation

20.1     <u>Change in Personnel</u>.  In the event any person ceases to be a Partner for any reason, including but not limited to:  (a) death of a Partner or (b) termination of a Partner, the Partnership shall continue, subject to the provisions of Sections 20.2 and 20.3.

20.2     <u>Notice Required from Terminating Partner - Damages.</u>

(a)     Any Partner who elects retirement under Section 17.1(e) shall give written notice to the Partnership in accordance Section 17.1(e).

(b)     A guardian, conservator or other officer, into whose care or custody a Partner or a Partner's property has been committed by order of court, may elect without notice, within ninety (90) days after his appointment, to have the ward considered to be Disabled under Section 17.1(d).

(c)     Unless a Partner terminates as Disabled under Section 17.1(d), no Partner shall have the right to voluntarily terminate his Partnership relationship until such Partner has given at least sixty (60) days written notice of termination to the Partnership (which notice may be accelerated in the Partnership's discretion).

(d)     If a Partner voluntarily terminates his Partnership relationship without giving the required notice, such Partner agrees to pay liquidated damages ("Liquidated Damages") in an amount equal to the total of (i) his Capital Investment and (ii) any undistributed income, provided that Liquidated Damages shall not be less than Fifty Thousand Dollars ($50,000).  Such liquidated damages shall be secured by a lien

- 37 -

upon the Partnership interests of any terminating Partner. The requirements for such notice or the amount of such liquidated damages may be waived or modified at the option of the Board.

20.3   <u>Dissolution and Liquidation Required</u>. In the event the Partnership is dissolved under Section 8.7(b)(3), or by decree of court, the rights, benefits, interest, duties and obligations of the Partners shall be as determined by the Board, as decreed by the court or as otherwise required under applicable law, as the case may be.

ARTICLE 21

Payments to Terminated Partners - Continuation of Business

21.1   After an event described in Section 20.1, the Board is authorized and directed to make certain payments on behalf of the continuing Partnership under the following terms and conditions. Payments to terminated Partners (regardless of whether the termination is voluntary or involuntary) are as follows:

(a)   <u>Disposition of Capital Investment</u>. Subject to the Partner's compliance with Section 17.3, the continuing Partnership shall pay the terminated Partner's Capital Investment in accordance with the capital plan approved by the Board.

(b)   <u>Allocation of Income</u>. The remaining Partnership interest of a terminated Partner shall be paid in accordance with the terms of the then-current Partner compensation plan or as directed by the Board.

ARTICLE 22

Wind-Up of Business

22.1   <u>Duty of the Board</u>. If the Partnership is dissolved, the Board shall have the right and obligation to wind up the business of the Partnership and the members thereof shall be individually entitled to reasonable compensation for their services.

22.2   <u>Conflict of Interest</u>. It is agreed that in the event the business of the Partnership is wound up and liquidated, in whole or in part, as provided in this Agreement, none of its assets shall be sold or otherwise transferred in a transaction which is not at "arm's length," as hereinafter defined, without the written consent of each terminating Partner or such terminating Partner's personal representative. A transaction shall not be considered to be at "arm's length" unless either (a) each terminating Partner, who has not otherwise consented, receives as his share of the proceeds of such transaction not less than such Partner would have been entitled to receive as provided in Article 21, or (b) for a period of three (3) years after the date of sale or other transfer, no

- 38 -

Partner in the Partnership shall have any direct or indirect interest in, shall be employed by, or shall otherwise be associated with any buyer and/or transferee.

22.3    Distribution of Proceeds of Liquidation.   The net proceeds of liquidation, to the extent available, shall:  (a) be distributed to the Partners to the extent of their income and loss accounts to the date of liquidation; and (b) in the event there is a balance, be distributed to each Partner in proportion to his Capital Investment.

### ARTICLE 23
### Delivery of Notices

23.1    Notices provided for under this Agreement shall be deemed to have been given when mailed by registered or certified mail, with proper postage attached and addressed to:  3600 American Boulevard West, Third Floor, Bloomington, Minnesota 55431, when intended for the Board, the Partnership or the Managing Partner & CEO, and to the address shown in the then current telephone directory of the Partner's home city when intended for any Partner.  Any Partner or individual, or such person's personal representative, guardian or successor in interest may designate a different address by giving written notice thereof to a director.  The Board, Managing Partner & CEO and/or the Partnership may designate a different address by giving written notice thereof to the Partners.  The provisions of this paragraph shall not be construed to exclude the use of any other method of giving written notice.

### ARTICLE 24
### Miscellaneous Provisions

24.1    Gender.   Whenever used in this Agreement, any pronoun shall be deemed to cover and have reference to all genders and to be both singular and plural, as applicable.

24.2    Arbitration.

(a)      Any controversy, claim, or dispute arising out of or relating to this Agreement or any breach thereof, including without limitation any dispute concerning the scope of the arbitration clause set forth below, shall be resolved as set forth below. Notwithstanding the foregoing, claims for alleged violations of Sections 7.1, 7.2, 14.2, 14.4, 14.5, 14.6, 15.1, 15.2 and 17.4 may be brought immediately in court, without having to first file a mediation or arbitration, for the purpose of obtaining preliminary injunctive relief (e.g. temporary restraining orders and/or preliminary injunctions) pending the outcome of the dispute resolution procedures described in this Section 24.2, and any permanent equitable relief awarded in conjunction therewith. With respect to alleged violations of other sections of this Agreement not

- 39 -

specifically mentioned in the prior sentence, a party may not seek injunctive relief in a court of competent jurisdiction until the prescribed mediation and arbitration set forth in this Agreement have been concluded, but the arbitrators may award such relief.

(b)   In the event a dispute arises relating to this Agreement, any party may demand mediation by notifying the American Arbitration Association ("AAA") in the location where any arbitration would be conducted as set forth below, in writing with copies to all other parties involved in the dispute. The notification will state with specificity the nature of the dispute and the amount of any claims. Upon receipt of the mediation demand, the AAA will immediately convene a pre-mediation telephone conference of the parties hereto. The parties will make a representative, with full authority to settle, available for such a conference within five (5) business days of being contacted by the AAA or its designated mediator ("Mediator"). During the pre-mediation telephone conference, the parties will agree on mediation procedures or, in the event they cannot agree, Mediator will set the mediation procedures. The mediation procedures will provide for the mediation to be completed within thirty (30) business days of the date of the initial demand for mediation. The parties will participate in good faith in the mediation and will use their best efforts to reach a resolution within the thirty (30) day time period. Each party will make available in a timely fashion a representative with authority to resolve the dispute. In the event that the dispute has not been resolved within thirty (30) days, the mediation may continue if the parties so desire. If not, the Mediator will so notify the parties and declare the mediation terminated. In the event that the mediation continues beyond thirty (30) days, but is not resolved within what Mediator believes is a reasonable time thereafter, the Mediator will so notify the parties, and declare the mediation terminated. Fees of the mediator shall be split between the parties.

(c)   After the mediation has been declared terminated, the matters in dispute shall, subject to Section 24.2(f), be settled by binding arbitration in accordance with the Commercial Arbitration Rules (the "Rules") of the AAA as supplemented herein and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. The governing law of this Agreement shall be the law used by the arbitrators in rendering their award, except that the Federal Rules of Evidence shall apply. There shall be three arbitrators. Each party shall choose one arbitrator, and the two chosen arbitrators shall choose the third arbitrator. Pending

- 40 -

final award, the arbitrators' compensation and expenses shall be advanced equally by the parties. The AAA shall hold an administrative conference with counsel for the parties within twenty (20) days after the filing of the demand for arbitration by any one or more of the parties. The parties and the AAA shall thereafter cooperate in order to complete the appointment of three arbitrators as quickly as possible. Within fifteen (15) days after all three arbitrators have been appointed, an initial meeting (which, if the arbitrators so determine, may be by phone) among the arbitrators and counsel for the parties shall be held for the purpose of establishing a plan for administration of the arbitration, including: (1) definition of issues; (2) the timing of discovery conducted in accordance with Section 24.2(d) below; (3) exchange of documents and filing of detailed statements of claims, prehearing memoranda and dispositive motions; (4) schedule and place of hearings; and (5) any other matters that may promote the efficient, expeditious, and cost-effective conduct of the proceeding. Each party shall have the right to request the arbitrator to make specific findings of fact.

(d)     The parties shall have the right to conduct and enforce pre-hearing discovery in accordance with the then-current Federal Rules of Civil Procedure, subject to these limitations: (i) each party may serve no more than two (2) sets of interrogatories; (ii) each party may depose the other party's expert witnesses who will be called to testify at the hearing, plus three (3) fact witnesses without regard to whether they will be called to testify (the parties may permit additional discovery in their discretion); and (iii) document discovery and other discovery shall be under the control of and enforceable by the arbitrators. Discovery disputes shall be decided by the arbitrators. The arbitrators are empowered: (i) to issue subpoenas to compel pre-hearing document or deposition discovery; (ii) to enforce the discovery rights and obligations of the parties and to permit additional discovery in their discretion; and (iii) to otherwise control the scheduling and conduct of the proceedings.

(e)     The majority decision of the arbitrators shall contain findings of facts on which the decision is based, including any specific factual findings requested by either party, and shall further contain the reasons for the decision with reference to the legal principles on which the arbitrators relied. Subject to Section 24.2(f), such decision of the arbitrators shall be final and binding upon the parties. The arbitration shall take place in Kansas City, Missouri. In the event the arbitrators find that one of the parties has breached this Agreement, in addition to any other award, the breaching party shall

- 41 -

pay the nonbreaching party's attorney's fees and costs incurred in connection with the arbitration.

(f)     In addition to the remedies and review powers otherwise provided by law, a state or federal court in the state where the arbitration took place shall, on a motion to confirm or vacate the award of the arbitrators, have the authority to review the award for errors of law committed by the arbitrators which affect the final award, and may correct the error by modifying or vacating the award and/or remanding the award to the arbitrators for further proceedings consistent with the court's order. No further appeal of legal errors committed by the arbitrators is permitted and the court shall have no power to review factual findings of the arbitrators. **THE PARTIES TO THIS AGREEMENT HEREBY CONSENT TO THE JURISDICTION OF SUCH COURTS FOR ALL PURPOSES RELEVANT TO THIS AGREEMENT AND WAIVE ANY OBJECTIONS THERETO OR TO VENUE THEREIN, INCLUDING BUT NOT LIMITED TO THOSE BASED ON THE INCONVENIENCE OF SUCH FORUM.**

24.3     Waiver of Breach. The waiver by the Partnership of any breach of any provision of this Agreement by any Partner or any group of Partners shall not operate or be construed as a continuing waiver or a waiver of any subsequent breach of such provision or any other provision contained in this Agreement. Further, no waiver of any breach of any provision of this Agreement shall be valid unless approved by the Board.

24.4     Severability. If any one or more of the provisions of this Agreement or its application to any person or circumstance is determined to be invalid, illegal or unenforceable to any extent or for any reason, by a tribunal of competent jurisdiction, then such provision or provisions shall be deemed to be severed and deleted, to the extent necessary, and neither such provision nor severance shall affect the validity of the remaining provisions of this Agreement which shall remain in full force and effect. In the event of a finding of partial invalidity, illegality or unenforceability by a tribunal of competent jurisdiction, such tribunal is hereby instructed to modify such provision to the minimum extent necessary to avoid such invalidity, illegality or unenforceability, provided such modification does not alter the purpose or intent of such provision.

24.5     Further Documents. Each party agrees to execute, with acknowledgment and affidavit if required, any and all documents in writing which may be required under this Agreement.

24.6     Counterparts and Facsimiles. The Partners may execute this Agreement and any and all Approvals of Partnership Agreement simultaneously, in any number of counterparts, or on facsimile copies,

each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

24.7     Applicable Law. Each of the parties hereto mutually agrees and understands that this Agreement has been established pursuant to the Act and that its terms and the obligations of the parties hereunder are to be interpreted and enforced in accordance with the applicable statutory and common law of said state; further that the Partnership shall be a Registered Limited Liability Partnership pursuant to the terms of the Act to provide for the registration of certain partnerships governed thereby as Registered Limited Liability Partnerships.

24.8     Headings. All headings in this Agreement are for convenience only and not intended to affect the meaning of any provision hereof.

24.9     Waiver of Jury Trial. Notwithstanding anything to the contrary herein, if at any time there is a matter pending in a court of competent jurisdiction regarding any matter directly or indirectly related to this Agreement and/or a Partner's status or compliance hereunder, the parties hereto waive any and all right to any trial by jury.

*****

IN WITNESS WHEREOF, effective as of the date first set forth above the Partnership hereby acknowledges the terms of this Agreement and agrees to become a party thereto.

McGladrey & Pullen, LLP

By: _David R Sudder_

     David R. Scudder

Its: Managing Partner & CEO

IN WITNESS WHEREOF, the approval of this Agreement by the Partners is evidenced by the following certification:

### CERTIFICATE

The undersigned Managing Partner & CEO of McGladrey & Pullen, LLP does hereby certify that (a) a true, correct and complete copy of this Agreement has been delivered to each Partner, (b) that this Agreement has been duly adopted by the Partners of McGladrey & Pullen, LLP and (c) that this Agreement has become effective in accordance with the terms and provisions thereof.

Dated August 3, 2010

David R. Scudder
Managing Partner & CEO

4744349_22.DOC

- 44 -

APPROVAL OF PARTNERSHIP AGREEMENT

I hereby approve and agree to be bound by the McGladrey & Pullen, LLP Partnership Agreement as amended and restated August 3, 2010.

_____
(Please Print Name)

_____
(Signature)

_____
(Date)

1

# McGLADREY & PULLEN, LLP

### Acknowledgement and Signature

I, the undersigned Partner of the Partnership, acknowledge and agree that: (i) the signature below is my true and actual signature, (ii) I am duly authorized to execute and deliver this Written Action without condition, restriction or limitation, and (iii) my signature below shall constitute my agreement to be bound by the Partnership's Partnership Agreement, as may be amended and restated to reflect the approval by a Requisite Partner Consent of each or any of the matters proposed to be adopted by this Written Action, regardless of whether I elect "For" each or any such matter.

IN WITNESS WHEREOF, the undersigned, by executing and delivering this Written Action, approves, acknowledges and agrees to, as the case may be, the matters set forth in this Written Action.

Partner:

Steven   Schwartz
[Print Name]

E034641
[Employee Number]

[Signature]

Dated: 8/13/10

*[Acknowledgement and Signature Page to Written Action Form]*

- 1 -

Final 71410