UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RSM McGladrey, Inc.,

        Plaintiff,              **MEMORANDUM OPINION
                                              AND ORDER**
v.                                   Civil No. 11-612 ADM/SER

Peter Epp, Gil Bernhard, and Steven Schwartz,

        Defendants.

_____

Lynne M. Fischman Uniman, Esq., and Anju Uchima, Esq., Andrews Kurth LLP, New York, NY, and Arthur G. Boylan, Esq., Leonard Street and Deinard, PA, Minneapolis, MN, on behalf of Plaintiff.

William S. Gyves, Esq.,, Epstein Becker & Green, PC, New York, NY, and Michael J. Minenko, Esq., Minenko & Hoff, Edina, MN, on behalf of Defendants.

_____

## I.  INTRODUCTION

On April, 29, 2011, the undersigned United States District Judge heard oral argument on Plaintiff RSM McGladrey, Inc.'s ("RSM") Motion for Preliminary Injunction [Docket No. 12]. RSM seeks to enjoin Defendants Peter Epp, Gil Bernhard, and Steven Schwartz (collectively "Defendants") from breaching certain non-compete covenants in an employment contract between Defendants and RSM, their former employer. Defendants oppose the motion. For the reasons set forth below, the motion is granted.

## II.  BACKGROUND

RSM is a nation-wide provider of tax services. See Notice of Removal [Docket No. 1], Lipari Aff. ¶ 3. Defendants were managing directors of RSM, working out of its New York office, specializing in RSM's health care practice. Id. ¶¶ 2, 4. As a condition of their employment as managing directors, Defendants each signed identical Managing Director

Employment Agreements (the "Employment Agreements"). Id. ¶ 5. The Employment Agreements include covenants restricting the solicitation and servicing of certain RSM clients for a period of two years after termination of employment. See Notice of Removal, Compl. Exs. A, B, C § 5.2. The Employment Agreements also provided that Minnesota would be the forum for and provide the substantive law of disputes. Id. §§ 8.8, 8.9. The Employment Agreements also have provisions regarding enforcement, preliminary equitable relief, and arbitration. Id. §§ 6, 8.5.

RSM terminated Defendants as employees in January 2011. Lipari Aff. ¶ 7. Defendants then joined RSM's competitor J.H. Cohn. Id. Defendants have allegedly breached the covenants in the Employment Agreement by servicing and soliciting RSM clients. Id. ¶ 8. An action between the parties was first commenced in New York state court, which was voluntarily discontinued. Gyves Decl. [Docket No. 5] ¶ 20. The present action was then commenced in Minnesota state court, where RSM obtained an ex-parte Temporary Restraining Order (the "TRO") against Defendants. Defendants then removed this action to federal court. A motion by Defendants to dissolve the TRO, and a motion by RSM to remand, followed and were denied by Order dated March 22, 2011 [Docket No. 49]. The parties attempted to mediate their dispute to no avail, and are currently proceeding with arbitration pursuant to the Employment Agreements.

### III.  DISCUSSION

#### A.   Legal Standard

The parties dispute whether their agreement to arbitrate disputes under the Employment Agreements deprives this Court of authority to grant a preliminary injunction. Under Eighth Circuit precedent, a preliminary injunction may be granted in a case subject to arbitration only

where "the contract terms contemplate such relief and it can be granted without addressing the merits." Manion v. Nagin, 255 F.3d 535, 538 (8th Cir. 2001).  Therefore, injunctive relief is appropriate only if a contract has "qualifying contractual language." Id. at 538-39.  "Qualifying contractual language" is language that provides the Court with clear grounds to grant injunctive relief without addressing the merits of the underlying arbitrable dispute. Id. at 539 (citing Peabody Coalsales Co. v. Tampa Elec. Co., 36 F.3d 46, 47 n.3 (8th Cir. 1994)).

Without qualifying contractual language, courts must necessarily pass on the merits of a claim because the standard for granting a preliminary injunction requires consideration of: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981).  However, a preliminary injunction pending arbitration may be granted without considering "the probability that the movant will succeed on the merits" because courts may disregard the Dataphase criteria in deference to the arbitrators. See Peabody Coalsales, 36 F.3d at 49 n.7.

What constitutes "qualifying contractual language" is demonstrated by a comparison of Manion, where injunctive relief was denied, and Peabody Coalsales, where injunctive relief was granted.  In Manion, the former manager of a boat retail cooperative brought suit against the cooperative and instituted arbitration proceedings after being discharged. Manion, 255 F.3d at 537.  The former manager then moved for a preliminary injunction requiring the cooperative to pay his salary and benefits during arbitration and seeking a declaratory judgment interpreting contract terms. Id.  The Eighth Circuit Court of Appeals affirmed the denial of the motion by

this Court. The <u>Manion</u> court reasoned that although the contract between the parties stated that the agreement to arbitrate "is without prejudice to the right of a party . . . to request interim relief directly from any court . . . of competent jurisdiction . . . without prior authorization of the arbitrator(s)," that language was not "qualifying contractual language." <u>See id.</u> at 538-393. The contract language merely authorized a party to *request* relief, as opposed to being entitled to relief, which would embroil the court in the merits of the dispute. <u>Id.</u> at 538-39.

In <u>Peabody Coalsales</u>, on the other hand, the Eighth Circuit found qualifying contractual language and allowed injunctive relief notwithstanding the agreement to arbitrate. In that case, a coal company contracted to supply an electric company with coal for a fifteen year period. <u>Peabody Coalsales</u>, 36 F.3d at 47. The agreement between the parties called for arbitration. <u>Id.</u> After the electric company attempted to cancel the contract, the coal company moved for an injunction requiring the parties' to perform under the contract pending the resolution of arbitration. <u>Id.</u> The Court granted the injunction, finding that the parties' agreement contained "qualifying contractual language" because it expressly stated that "performance of [the parties'] respective obligations under this Agreement shall be continued in full by the parties during the dispute resolution process . . . ." <u>Id.</u> Based on that language, the Court ruled that it could grant the injunction without delaying arbitration and without considering the merits of the case. <u>Id.</u> at 48-49.

**B.     Employment Agreements include "qualifying contractual language"**

In this case, a preliminary injunction is appropriate because the Employment Agreements include "qualifying contractual language." The terms of the Employment Agreements provide the Court with clear grounds to grant injunctive relief without addressing the merits of the

underlying arbitrable dispute.  The parties clearly intended that injunctive relief be available pending the resolution of arbitration.  The section of the contract that discusses arbitration states: "claims for alleged violations of . . . [the non-compete covenants] . . . may be brought immediately in court, without having to first file a mediation or arbitration, for the purpose of obtaining preliminary injunctive relief . . . pending the outcome of the dispute resolution procedures . . . ."  Compl Exs. A, B, C § 8.5.  In the section of the contract discussing the non-compete provisions, the parties agreed that RSM "shall be entitled to seek equitable relief against [Defendants] by way of injunction without having to first file a mediation or arbitration."  Id. § 6.1.

Further, the parties evinced an intent to have an injunction issue without addressing the merits of the dispute.  In the very next subsection after the non-compete provisions, Defendants agreed to waive arguments relating to irreparable injury and with respect to enforceability of the contract.  Id. § 6.2.  Therefore, unlike Manion where the contract language only allowed the parties to request injunctive relief by embroiling the court in the merits of this case, the Employment Agreements evince an intent to avoid addressing the merits of the dispute by waiving any arguments relating to irreparable injury or enforceability.  By waiving those arguments, the parties clearly intended that the first Dataphase factor not be reached.  Furthermore, because the injunction sought is coterminous with the non-compete provisions, the likelihood of success turns on the enforceability of those provisions.  Therefore, waiving arguments related to enforceability shows a clear intent that the third Dataphase factor (success on the merits) also not be reached.  The remaining factors, balancing of hardships and public interest, do not address the merits of the underlying dispute, and weigh in favor of injunctive

5

relief. Therefore, the Employment Agreements include the required "qualifying contractual language."

Finally, unlike Manion, the Court will not have to stay arbitration proceedings or interpret contract terms to grant relief. The parties are proceeding with arbitration, and the Court's grant of relief here can be reviewed by the arbitrator. Finally, the Court's decision here does not embroil it in the merits of this case in any way. Defendants argue that preliminary relief is unnecessary because the contract is unenforceable. The arbitration agreement precludes this Court from passing on the validity of the contract. This Court must only give effect to the parties' desire to arbitrate their dispute. Their contract clearly evinces a desire to have preliminary injunctive relief in place until the arbitrator passes on the merits of the dispute and determines what relief, if any, is appropriate.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. RSM's Motion for Preliminary Injunction [Docket No. 12] is **GRANTED**;

2. Defendants' Motion to Declare Temporary Restraining Order Expired or Dissolved [Docket No. 51] is **DENIED**;[1] and

3. Defendant Peter Epp is hereby enjoined from, on behalf of himself or others, soliciting, attempting to solicit, diverting, attempting to divert, taking away, attempting to take away, or accepting any business of a type similar to that provided or planned to be provided by

---

[1] Defendants' motion regarding the TRO is now moot in light of the disposition of RSM's Motion for Preliminary Injunction.

RSM from any client, customer, or account of RSM or its predecessors that was assigned to Defendant, serviced or counseled by Defendant, or introduced to Defendant during the two year period prior to Defendant's termination, or any employee of such clients, customers, or accounts of RSM that selected, or had substantial input in the selection of RSM to provide services, or any prospective client, customer, or account that was actively solicited by RSM within two years of Defendant's termination, provided that Defendant knew or reasonably should have known of such solicitation; Defendant shall not render any services or sell any products, unless such services or products or products are not offered and are not planned to be offered by RSM or its subsidiaries, to any client, customer, or account of RSM or its predecessors that was assigned to Defendant, serviced or counseled by Defendant, or introduced to Defendant during the two year period prior to Defendant's termination, or any employee of such clients, customers, or accounts of RSM that selected, or had substantial input in the selection of RSM to provide services, or any prospective client, customer, or account that was actively solicited by RSM within two years of Defendant's termination, provided that Defendant knew or reasonably should have known of such solicitation; Defendant further shall not solicit, induce or in any manner encourage any other managing director, employee or principal of RSM or any of its subsidiaries to terminate his or her position with RSM; Defendant shall not breach any other covenant contained in his respective Managing Director Employment Agreement;

    4. Defendant Gil Bernhard is hereby enjoined from, on behalf of himself or others, soliciting, attempting to solicit, diverting, attempting to divert, taking away, attempting to take away, or accepting any business of a type similar to that provided or planned to be provided by RSM from any client, customer, or account of RSM or its predecessors that was assigned to

Defendant, serviced or counseled by Defendant, or introduced to Defendant during the two year period prior to Defendant's termination, or any employee of such clients, customers, or accounts of RSM that selected, or had substantial input in the selection of RSM to provide services, or any prospective client, customer, or account that was actively solicited by RSM within two years of Defendant's termination, provided that Defendant knew or reasonably should have known of such solicitation; Defendant shall not render any services or sell any products, unless such services or products or products are not offered and are not planned to be offered by RSM or its subsidiaries, to any client, customer, or account of RSM or its predecessors that was assigned to Defendant, serviced or counseled by Defendant, or introduced to Defendant during the two year period prior to Defendant's termination, or any employee of such clients, customers, or accounts of RSM that selected, or had substantial input in the selection of RSM to provide services, or any prospective client, customer, or account that was actively solicited by RSM within two years of Defendant's termination, provided that Defendant knew or reasonably should have known of such solicitation; Defendant further shall not solicit, induce or in any manner encourage any other managing director, employee or principal of RSM or any of its subsidiaries to terminate his or her position with RSM; Defendant shall not breach any other covenant contained in his respective Managing Director Employment Agreement;

    5. Defendant Steven Schwartz is hereby enjoined from, on behalf of himself or others, soliciting, attempting to solicit, diverting, attempting to divert, taking away, attempting to take away, or accepting any business of a type similar to that provided or planned to be provided by RSM from any client, customer, or account of RSM or its predecessors that was assigned to Defendant, serviced or counseled by Defendant, or introduced to Defendant during the two year

period prior to Defendant's termination, or any employee of such clients, customers, or accounts of RSM that selected, or had substantial input in the selection of RSM to provide services, or any prospective client, customer, or account that was actively solicited by RSM within two years of Defendant's termination, provided that Defendant knew or reasonably should have known of such solicitation; Defendant shall not render any services or sell any products, unless such services or products or products are not offered and are not planned to be offered by RSM or its subsidiaries, to any client, customer, or account of RSM or its predecessors that was assigned to Defendant, serviced or counseled by Defendant, or introduced to Defendant during the two year period prior to Defendant's termination, or any employee of such clients, customers, or accounts of RSM that selected, or had substantial input in the selection of RSM to provide services, or any prospective client, customer, or account that was actively solicited by RSM within two years of Defendant's termination, provided that Defendant knew or reasonably should have known of such solicitation; Defendant further shall not solicit, induce or in any manner encourage any other managing director, employee or principal of RSM or any of its subsidiaries to terminate his or her position with RSM; Defendant shall not breach any other covenant contained in his respective Managing Director Employment Agreement; and

      6. This Order is without prejudice to any decision reached by an arbitrator or arbitration panel pursuant to the Employment Agreements.

      LET JUDGMENT BE ENTERED ACCORDINGLY.

                                  BY THE COURT:

                                    s/Ann D. Montgomery
                                    ANN D. MONTGOMERY
                                    U.S. DISTRICT JUDGE

Dated:  May 3, 2011.